## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| **MERVYN HAMBURG**<br>**4920 Loring Drive, Apartment 1412**<br>**West Palm Beach, Florida 33417** | * <br><br>* |
| **Plaintiff** | * |
| **v.** | * |
| **GREG MEDNIK**<br>**9804 Tibron Court**<br>**Potomac, MD 20854** | * <br><br>* |
| **and** | * |
| **JEFFREY POLKES**<br>**13924 Wagon Way**<br>**Silver Spring, MD 20906** | * <br><br>* |
| **and** | * |
| **S. MICAH SALB, AS TRUSTEE OF**<br>**THE EILEEN DIANE HAMBURG**<br>**REVOCABLE TRUST**<br>**7979 Old Georgetown Road, Suite 1100**<br>**Bethesda, Maryland 20814** | * <br><br>* <br><br>* |
| **Defendants** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff, Mervyn Hamburg, as Trustee of the Hamburg Family Joint Revocable Property Trust, by his undersigned attorneys, files the Complaint against Greg Mednik, Jeffrey Polkes, and S. Micah Salb, as Trustee of the Eileen Diane Hamburg Revocable Trust, and states as follows:

### Jurisdiction and Venue

1.    Plaintiff, Mervyn Hamburg ("Mervyn"), is a citizen of the State of Florida.

2.    Defendant, Greg Mednik ("Greg"), is a citizen of the State of Maryland.

3.     Defendant, Jeffrey Polkes ("Polkes"), is a citizen of the State of Maryland.

4.     Defendant, S. Micah Salb, Esquire, is a citizen of the Washington, D.C. and regularly conducts business in the State of Maryland. At this time, Mr. Salb, as Trustee of the Eileen Diane Hamburg Revocable Trust, is included in this lawsuit only as a nominal party.

5.      This Court possesses personal jurisdiction over Defendants.  *See* FED. R. CIV. P. 4; MD. CODE ANN., CTS. & JUD. PROC. § 6-102.

6.     This Court possesses subject matter jurisdiction over this action as the parties hereto are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  *See* 28 U.S.C. § 1332 (LEXIS 2015); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185 (1989); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004).

## COUNT I
### (Declaratory Judgment)

7.     Mervyn and Eileen Diane Hamburg ("Eileen") were married for more than thirty years.

8.     From previous marriages, Eileen had two children, Greg and Jeffrey.

9.     Mervyn has three children from a previous marriage, Jonathan Hamburg, Jennifer Roach, and Lisa Pearson.

10.     Mervyn worked as an appellate attorney with the United Stated Department of Justice for forty-one (41) years.

11.     Mervyn was the financial breadwinner in the relationship, and his hard work enabled Mervyn and Eileen to open and grow multiple investment accounts during their marriage.

12.     In 2010 and thereafter, Mervyn and Eileen engaged Mr. Salb to assist with their estate planning.

2

7.      On June 29, 2010, Eileen established the Eileen Diane Hamburg Revocable Trust (the "Eileen Hamburg Trust").  On July 31, 2010, Eileen executed a first amendment to such Trust, and on September 14, 2016, she executed a second amendment to such Trust. Mr. Salb is the Trustee of the Eileen Hamburg Trust.

8.      Similarly, on June 29, 2010, Mervyn established the Mervyn Hamburg Revocable Trust (the "Mervyn Hamburg Trust").

9.      In pertinent part, the Eileen Hamburg Trust provides, if Mervyn survives Eileen, the Eileen Hamburg Trust shall be divided into two (2) separate shares, one to be designated as the "Eileen Diane Hamburg Marital Share" and the other to be designated as the "Eileen Diane Hamburg Family Trust."

10.     The Eileen Diane Hamburg Marital Share addresses the minimum distribution to Mervyn that constitutes a marital deduction.

11.     The balance of the Eileen Hamburg Trust shall constitute the Eileen Diane Hamburg Family Trust.

12.     Pursuant to Article XIII of the Eileen Hamburg Trust, the Eileen Diane Hamburg Family Trust shall be held, administered, and distributed as follows:

  a.     **Payment to Husband of All Income**.  Commencing with the date of the Grantor's death, the Trustees shall pay to or apply for the benefit of the Grantor's Husband during his lifetime all the net accounting income from the Eileen Diane Hamburg Family Trust in convenient installments but no less frequently than quarter-annually.

  b.     **Discretionary Payments of Principal for Husband**.   The Independent Trustee may pay to or apply for the benefit of the Grantor's Husband during his lifetime such sums from the principal of the Eileen Diane Hamburg Family Trust as in its sole discretion shall be necessary or advisable from time to time for medical care, education, support, and maintenance in reasonable comfort of the Grantor's Husband, taking into consideration to the extent the Independent Trustee deems advisable any other income or resources of the Grantor's Husband known to the Independent Trustee.

3

c.  **Limited Withdrawal by Husband**.  In addition to the income and discretionary payments of principal from this Trust, there shall be paid to the Grantor's Husband during his lifetime from the principal of this Trust upon his written request during the last month of each fiscal year of the Trust an amount not to exceed during such fiscal year the greater of Five Thousand ($5,000.00) Dollars or Five Percent (5%) of the total value of the principal of the Eileen Diane Hamburg Family Trust on the last day of such fiscal year without reduction for the principal payment for such fiscal year. This right of withdrawal is noncumulative, so that if the Grantor's Husband does not withdraw during such fiscal year[,] the full amount to which he is entitled under this Paragraph, his right to withdraw the amount not withdrawn shall lapse at the end of the fiscal year.

d.  Upon the death of the Grantor's Husband, [w]hen no child of the Grantor is living who is under the age of Twenty-One (21) years, the Trustee shall divide this Trust as then constituted into equal separate shares so as to provide One (1) share for each then living child of the Grantor and One (1) share for each deceased child of the Grantor who shall leave issue then living.  Each share shall be distributed or retained in trust as hereinafter provided.

13.  Accordingly, if both Greg and Jeffrey survive Mervyn, upon Mervyn's death, the Eileen Diane Hamburg Family Trust shall be divided into equal shares between Greg and Jeffrey.[1]

14.  Based upon information and belief, on September 10, 2021, Mervyn and Eileen executed the Hamburg Family Joint Revocable Property Trust (the "Property Trust").  The primary purpose of the Property Trust was to hold and administer one or more parcels of real property.

15.  Mervyn and Eileen were the initial Trustees under the Property Trust.

16.  The Property Trust provides, upon the resignation, death, or incapacity of one of the Trustees, the remaining grantor shall become the sole Trustee of the Property Trust.

17.  Article VIII of the Property Trust provides:

Upon the death of both Grantors, or at such earlier time as the Grantors may agree, or at such earlier time as one Grantor is deceased and the other Grantor elects to no longer retain his or her right of residency, the Property shall be sold.  The net proceeds of the sale of the Property shall be distributed such that three-quarters shall be distributed to the

---

[1] Both Greg and Jeffrey have attained the age of 21.

4

Trustee of the Eileen Hamburg Revocable Trust and one-quarter shall be distributed to the Trustee of the Mervyn Hamburg Revocable Trust.

18.     Accordingly, in the event Property Trust property is sold pursuant to Article VIII, the net proceeds of such sale shall be distributed as follows: 75% to the Eileen Hamburg Trust and 25% to the Mervyn Hamburg Trust.

19.     On or about October 8, 2021, the Property Trust acquired real property located at 8319 Abingdon Court, Bradenton, Florida 34201 (the "Sarasota Property") for a purchase price of $699,900.00.

20.     In June of 2024, Eileen as diagnosed with glioblastoma of the brain.  She underwent surgery on June 22, 2024. She spent the majority of July 2024 either hospitalized, in rehabilitation, or attending multiple doctor's or chemotherapy appointments. Eileen was unable to perform the daily tasks she previously performed.

21.     Furthermore, Mervyn suffered from a stroke in 2019, and as a result, he periodically struggles with memory issues. Mervyn historically relied on Eileen for many daily activities. Following her surgery, Eileen became anxious, aggressive, and physically impaired.  As a result, Mervyn was unable to care for her on his own.

22.     In August 2025, Greg engaged the services of in-home caregivers to assist with Eileen's medical care. The caregivers prepared meals and provided transportation services for both Mervyn and Eileen.

23.     In September 2025, Greg offered to assist Mervyn and Eileen with the management of their day-to-day lives, including the management of their finances.  Mervyn understood that he and Eileen were struggling to care for themselves.  Mervyn agreed that Greg could assist and he began relying on Greg to manage the finances for both him and Eileen. Mervyn gave Greg unfettered access to the joint Wells Fargo account, authorized Greg to pay expenses for the benefit

and care of both Mervyn and Eileen, and deferred to Greg's decisions concerning the couple's affairs.

24. Since Greg was his step-son and wished to ensure Eileen had appropriate care, Mervyn was justified in believing that Greg would not act in a manner that was adverse or inconsistent with the interest or welfare of Mervyn and Eileen. Since Mervyn had suffered from a stroke and Eileen had been diagnosed with glioblastoma of the brain, Mervyn placed a great deal of confidence in Greg, understanding that he was in a superior position to manage the couple's finances and daily affairs.

25. At such time, Mervyn was unaware of the provisions of the Trust, including provisions relating to Eileen's incapacity and Article IV.

26. Based upon information and belief, Greg was aware of the provisions of the Eileen Hamburg Trust and had knowledge of Mervyn's and Eileen's financial circumstances.

27. As of at least September 2024, Greg began making financial decisions for both Mervyn and Eileen, including decisions that impacted provisions of the Trust.

20. On April 17, 2025, Eileen passed away. On August 22, 2025, pursuant to Eileen's Will, Mervyn was appointed as the Personal Representative of Eileen's Estate.

21. Following Eileen's death, upon review the Property Trust, Mervyn was shocked that he would have agreed to distribute 75% of the proceeds from the sale of the Sarasota Property to the Eileen Hamburg Trust, while his Trust would have only received 25% from such sale.

22. On May 23, 2025, through counsel, Mervyn requested notes and correspondence from Mr. Salb relating to the distribution of the value of the Sarasota Property. Similarly, on July 28, 2025, Mervyn's counsel wrote to counsel for Greg and Jeffrey, stating: "[Mervyn] claims the 75/25 split was never agreed to. In fact, he invested more in the house than Eileen and if anything,

6

his family should have a larger share of the house.  I will discuss this with [Mervyn] and see if there is any correspondence with Mr. Salb as to the parties' intentions."

23.     On October 30, 2025, Mervyn, as sole Trustee of the Property Trust, sold the Property for a purchase price of $760,000.00.

24.     On or about November 5, 2025, $702,407.98, the net proceeds of the sale of the Sarasota Property, were erroneously deposited in an Ameriprise Brokerage Account (the "Ameriprise Account") titled in Mervyn's name, individually, rather than split between the Eileen Hamburg Trust and Mervyn's Trust.

25.     However, the proceeds were segregated into three separate accounts within Ameriprise. Approximately fifty percent (50%) of the proceeds remained in Account No. -95133, the undisputed sum payable to the Eileen Hamburg Trust.  Approximately twenty-five percent (25%) was deposited in Account No. -87133, representing the 25% that Mervyn disputed. Finally, approximately twenty-five (25%) was deposited in Account No. 03133, the undisputed portion payable to Mervyn's Trust.

26.     On March 25, 2026, Mervyn's counsel contacted Mr. Salb, the Co-Trustee of the Eileen Hamburg Trust, requesting his assistance in opening an account for such Trust "to ensure the proceeds from the sale are appropriately distributed." Mr. Salb indicated his willingness to assist in correcting this error.

27.     On March 27, 2026, Mervyn's counsel contacted counsel for Greg and Jeffrey to advise that Mervyn is aware of this error and is undertaking efforts to promptly remedy his mistake and stated, in pertinent part: "I appreciate there are various disputes amongst the parties in this case. However, this is not one of them.  My client made a mistake, and it will be remedied shortly."

28.     On March 31, 2026, Mr. Salb, Mervyn, Mervyn's counsel, and Jon Hamburg, Mervyn's son and attorney-in-fact, participated in a Zoom call, in which the participants discussed, among other things, the Ameriprise Account and the necessary corrective action.

29.     Moreover, during such call, pursuant to Mervyn's inquiry, Mr. Salb presented Mervyn with the original version of the Property Trust to address Mervyn's contention that he would not have agreed to split the proceeds from the sale of the Sarasotia property 75/25%.

30.     On April 23, 2026, Mervyn had Ameriprise issued a check payable to the Eileen Hamburg Trust in the amount of $500,465.69 as a corrective distribution from the sale of the Sarasota Property.

31.     In the meantime, on April 8, 2026, Mervyn resigned as Co-Trustee of Eileen Hamburg's Trust, leaving Mr. Salb as the sole Trustee.

32.     On August 21, 2025, Greg and Jeffrey filed a Complaint against Mervyn Hamburg in the Circuit Court for Montgomery County, Case No. C-15-CV-25-004584 (the "Eileen Hamburg Trust Lawsuit"). Greg and Jeffrey assert four claims against Mervyn:  a) Removal of Trustee Due to Incapacity; b) Removal of Trustee Due to Inherent Conflict of Interest; c) Declaratory Judgment; and d) Injunction.

33.     Notably, at no time did Greg and Jeffrey assert a claim against Mervyn for the erroneous deposit of the funds from the sale of the Sarasota Property in the Eileen Hamburg Trust Lawsuit.

34.     Despite Mervyn's corrective distribution of $500,465.69, Greg and Jeffrey assert that Mervyn owes an additional $57,479.72 to the Eileen Hamburg Trust.

35.     Greg and Jeffrey have also indicated that Mervyn allegedly acted with malice when he erroneously deposited 75% of the Sarasota funds in his personal account, despite the fact that

such funds were segregated from his portion of the proceeds from the sale of the Sarasota Property. Accordingly, Greg and Jeffrey have suggested that they are entitled to punitive damages.

36.     Based upon information and belief, Greg and Jeffrey contend the Eileen Hamburg Trust is entitled to punitive damages in an amount of at least $20,000.  Accordingly, the total amount in controversy concerning the erroneous deposit of the Sarasota funds and corrective distribution thereafter exceeds $75,000.

37.     Mervyn disputes that he owes an additional $57,479.72 to the Trust, disputes that he deposited the proceeds from the sale of the Sarasota Property in an account in his name out of malice, and denies that he is liable for punitive damages.

38.     As a result of Defendants' allegations, which are not the basis of the claims asserted in the Eileen Hamburg Trust Lawsuit, there exists an actual controversy of a justiciable issue between Mervyn, on one hand, and Greg and Jeffrey, on the other hand, which is within the jurisdiction of this Court, involving the rights and liabilities of the parties.  MD. CODE ANN., CTS. & JUD. PROC. § 3-409 (West 2026).

39.     Antagonistic claims are present between the parties.  These claims indicate imminent and inevitable litigation.

40.     A declaratory judgment by this Court will terminate this controversy.

**WHEREFORE**, Plaintiff requests that this Honorable Court determine and adjudicate the rights and liabilities of the parties with respect to Plaintiff's obligations as the former Trustee of the Hamburg Family Joint Revocable Property Trust, determine that the Eileen Diane Hamburg Revocable Trust has been made whole, and grant such other and further relief as the Court deems appropriate.

9

Respectfully submitted,


*/s/ Aaron J. Turner*
Aaron J. Turner, Federal Bar No. 29822
Jessica L. Duvall, Federal Bar No. 21241
aturner@levingann.com
jduvall@levingann.com
LEVIN GANN PA
1 W. Pennsylvania Ave., Suite 900
Towson, Maryland 21204
(410) 321-0600
Attorneys for Plaintiff